**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Bob and Me Productions, Inc.,

   Plaintiff,

  v.

Lemon Leaf Café, LLC,

   Defendant

2:20-cv-00801-VAP-RAOx

**Order GRANTING Motion for Default Judgment (Dkt. 21)**

 On January 27, 2020, Bob and Me Productions, Inc. ("Plaintiff") filed this action against Lemon Leaf Café, LLC ("Defendant").  (Dkt. 1).  The clerk entered default against Defendant on April 28, 2020.  (Dkt. 15).[1]  Plaintiff filed the instant Amended Motion for Default Judgment (the "Motion") on May 27, 2020.  (Dkt. 21).  Defendant filed no opposition.

---

[1] Defendant was served with summons and complaint on February 1, 2020. (Dkt. 10).  Federal Rule of Civil Procedure 12(a)(1) requires a defendant to answer within 21 days after service of a summons and complaint, and Defendant did not file responsive pleadings and has made no appearance in this case.  Consequently, on April 27, 2020, Plaintiff requested that the clerk enter default against Defendant.  (Dkt. 13).

United States District Court
Central District of California

United States District Court
Central District of California

The Court finds the matter suitable for decision without a hearing pursuant to Local Rule 7-15.  After considering all papers filed in support of the Motion, the Court GRANTS the Motion as to Counts 1, 3, and 4.  The Court DENIES the Motion as to Count 2.

## I. BACKGROUND

Plaintiff has owned and operated the "The Lemon Leaf Café: Gourmet Marketplace" restaurant at 653 West Lancaster Boulevard, Lancaster, California, since 2005.  (Dkt. 1 ¶¶ 1, 7).  Plaintiff registered the restaurant's trademark (hereafter, the "Mark") with the U.S. Trademark Registration in 2018.  (Dkt. 1 at 3; Dkt. 21, Ex. F).  The Mark includes the name of the restaurant, The Lemon Leaf Café, with an image of a lemon in place of the "O" in "Lemon."  (Dkt. 1 at 3).  Plaintiff has used the Mark since 2005 in its storefront, menu and print advertising, as well as on social media and the restaurant's website.  (Dkt. 1 ¶ 9).  Plaintiff alleges he has invested substantial resources in marketing and promoting the Mark in California and across the United States, resulting in a contract with a national defense contractor for in-house catering.  (Dkt. 1 ¶ 9).  Additionally, Plaintiff claims to have been recognized on Southern California based KTLA News as well as other televised food segments, leading to food orders and shipments throughout the United States.  (Dkt. 1 ¶ 10).

Defendant operates a restaurant, also called "Lemon Leaf Café," at 916 West Burbank Blvd Ste. H, Burbank, California, 60 miles from Plaintiff's restaurant.  (Dkt. 1 ¶¶ 2, 38).  Plaintiff alleges Defendant serves similar restaurant items to the same patron base.  (Dkt. 21 at 1).  Defendant uses a

word design on its storefront, menu, print advertising, and online channels that Plaintiff claims is "confusingly similar" to the Mark.  (Dkt. 21, Ex. C). Plaintiff alleges his attorney sent two cease and desist letters between April 2019 and January 2020, alerting Defendant to his ownership of the Mark, the "extensive and valuable goodwill" the Mark enjoys, and the resulting confusion to potential customers due to the similarity of Defendant's logo to Plaintiff's Mark. (Dkt. 21, Ex. K)  Plaintiff alleges that Defendant's continued use of the Mark has led to written and telephonic inquiries about Defendant's restaurant, demonstrating customer confusion between the two establishments.  (Dkt. 1 ¶ 13).

Plaintiff's complaint pleads claims for (1) federal trademark infringement, 15 U.S.C. §§ 1114, 1125(a), (2) federal trademark dilution, 15 U.S.C. §1125(c), (3) unfair competition, Cal. Bus. & Prof. Code §§ 17200, 17500, and (4) common law trademark infringement.  (Dkt. 1 at 6-10).  Plaintiff now moves for Default Judgment.  (Dkt. 21).

## II.    LEGAL STANDARD
### A.  Local Rule 55-1

Local Rule 55-1 provides that an application for default judgment must be accompanied by a declaration in compliance with Federal Rule of Civil Procedure 55(b) setting forth, *inter alia*, when and against what party the default was entered and the identification of the pleading to which default was entered.  Plaintiff has provided this.  (Dkt. 21).

### B.  Default Judgment

Federal Rule of Civil Procedure 55 authorizes the Court to enter default judgment against a party who "fail[s] to plead or otherwise defend" a claim. Fed. R. Civ. P. 55 (a)–(b)(2). "Even if entry of default has been made by the court clerk, granting a default judgment is not automatic; rather it is left to the sound discretion of the court." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

In exercising its discretion to grant or deny an application for default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits (collectively, "Eitel factors"). *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### III.   DISCUSSION

**A.   Default Judgment**

Generally, upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Televideo Sys. Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); Fed. R. Civ. P. 8(b)(6). Pursuant to Rule 8(b)(6), the Court accepts as true the allegations in the unanswered Complaint and the statements in the

declarations submitted in support of Plaintiff's Motion. "The court must still consider, however, whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Mnatsakanyan v. Goldsmith & Hull APC*, 2013 WL 10155707, at *2 (C.D. Cal. May 14, 2013).

In applying the *Eitel* factors, the Court finds that Plaintiff is entitled to default judgment on three of the four claims. The Court will discuss each factor in turn.

### 1.   Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers "whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, Plaintiff contends that without default judgment, patrons will continue to confuse his restaurant with Defendant's and wrongly assume the Defendant's restaurant is associated with his establishment. (Dkt. 21 at 7-8). Plaintiff also asserts that absent at judgment in his favor, he will continue "receive written and telephonic inquiries regarding Defendant's restaurant" and "receive customer testimonials regarding their confusion between the two establishments." (Dkt. 1 ¶ 13).

The Court agrees that absent entry of a default judgment, Plaintiff will most likely be without a remedy, given that Defendant has failed to cease use of the Mark and refused to participate in litigation. Accordingly, this factor favors entry of default judgment.

United States District Court
Central District of California

2.   <u>The Merits of Plaintiff's Substantive Claims and Sufficiency of the
Complaint</u>

As noted above, Plaintiff brings four claims against Defendant: (1)
federal trademark infringement, (2) federal trademark dilution, (3) unfair
competition under California state law, and (4) common law trademark
infringement.  (Dkt. 1).  The second and third *Eitel* factors "require that a
plaintiff state a claim on which [the plaintiff] may recover."  *PepsiCo*, 238 F.
Supp. 2d at 1175.  The Court must determine, therefore, whether, accepting
the facts alleged in the complaint as true, Plaintiff has successfully pled the
elements of each claim.

a.   *Counts 1, 3, and 4*

The Ninth Circuit has "consistently held that state common law claims of
unfair competition and actions pursuant to California Business and
Professions Code § 17200 are substantially congruent to claims made
under the Lanham Act."  *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 300
F. Supp. 3d 1073 (S.D. Cal. 2017) (quoting *Cleary v. News Corp.*, 30 F.3d
1255, 1262–63 (9th Cir. 1994)).  *See also Zeltiq Aesthetics, Inc. v. BTL
Indus., Inc.*, 32 F. Supp. 3d 1088 (N.D. Cal. 2014).  Furthermore, a common
law trademark infringement claim and unfair competition claim (based on
trademark infringement) are subject to the same legal standards as a
Lanham Act trademark claim.  *Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190, 1221 (9th Cir. 2012) (citing *Jada Toys, Inc. v. Mattel, Inc.*,

518 F.3d 628, 632 (9th Cir. 2008)).  Therefore, the Court assesses Counts 1, 3, and 4 under the Lanham Act standard.

To prevail on a federal trademark infringement claim under the Lanham Act, a plaintiff must show that: (1) it has a valid mark, and (2) the defendant's use of that mark is likely to cause consumer confusion.  15 U.S.C. § 1114(1)(a); *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, Inc., 897 F.3d 1008, 1022 (9th Cir. 2018).  The Court analyzes each factor below.

### i.  Plaintiff's Mark and Defendant's Use of the Mark

Here, Plaintiff alleges and exhibits adequately its ownership and right to the mark in question by providing copies of the relevant registration certificates.  (Dkt. 21, Ex. F, G).  Further, Plaintiff has submitted evidence indicating that Defendant has used Plaintiff's trademark to promote and market unrelated goods and services without authorization.  (Dkt. 21 at 4, Ex. C).  Plaintiff states that Defendant "advertised, designed, distributed, offered for sale and sold food in interstate commerce" under a mark "confusingly similar" to Plaintiff's Mark.  (Dkt. 21 at 5).  Plaintiff therefore has demonstrated that it has a valid mark, and that Defendant has used that mark without authorization

### ii.  Likelihood of Confusion

Plaintiff must next show that Defendant's use of that the Mark is likely to cause consumer confusion.  Trademark infringement cases largely turn on "whether or not the public is likely to be deceived or confused by the

United States District Court
Central District of California

similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

In the Ninth Circuit, likelihood of confusion is assessed using the eight *Sleekcraft* factors: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The factors are non-exhaustive and "must be applied in a flexible fashion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012). "[A] determination may rest on those factors that are most pertinent to the particular case before the court . . . based on the particular circumstances." *Id. See also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001) (suggesting that not all factors are pertinent to an inquiry into the likelihood of confusion). "Two particularly probative factors are the similarity of the marks and the proximity of the goods." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017).

In applying these factors, the Court finds that Plaintiff has pled successfully a likelihood of confusion. Plaintiff alleges that the Defendant's signage bears similarity to its Mark, as both logos bear the same restaurant name and an image of a lemon in place of the "O" in lemon. (Dkt. 21, Ex. C, F, J). Plaintiff claims the Defendant's restaurant, located within 60 miles of

8

United States District Court
Central District of California

Plaintiff's, serves the same patron base and produces similar goods to that

of the Plaintiff: California cuisine of salads, sandwiches, and wraps.  (Dkt. 1

¶ 11).  Further, Plaintiff alleges that it has used the Mark since 2005 and has

since cultivated a prominent following in Southern California, and that

Defendant's use of a similar mark has created confusion among customers.

(Dkt. 1 ¶ 10, 13,18).  Plaintiff states that customers have called the

restaurant inquiring about the Defendant's business, and even entered

Plaintiff's restaurant seeking to pick up food ordered from Defendant's

restaurant.  (Dkt. 21 at 11).  Plaintiff claims that Defendant's continued use

of the Mark will continue to "creat[e] the false and misleading impression

that Defendant's food is distributed by Plaintiff, or associated or connected

with Plaintiff, or [has] the sponsorship, endorsement or approval of Plaintiff."

(Dkt. 21 at 8).

Plaintiff has shown the likelihood of confusion by establishing the

proximity and relatedness of the goods, similarity of the marks, and

evidence of actual confusion.  Plaintiff has also successfully demonstrated

that he has a valid mark.  Therefore, Plaintiff has stated a claim for Counts

1, 3, and 4.  Accordingly, the second and third *Eitel* factors weigh in favor of

default judgment for the claims of federal trademark infringement, unfair

competition, and common law trademark infringement.

### b. Count 2

The Court next considers Plaintiff's claim for federal trademark dilution

pursuant to 15 U.S.C. §1125(c).  Federal trademark dilution "is a cause of

action invented and reserved for a select class of marks—those marks with

9

United States District Court
Central District of California

such powerful consumer associations that even non-competing uses can impinge on their value."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999).  To state a claim for federal trademark dilution, "a plaintiff must show that: (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment."  *Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*, 255 F. Supp. 3d 1005 (S.D. Cal. 2017) (quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008)).

To establish the fame element, a mark "[must] be truly prominent and renowned."  *Avery Dennison Corp.*, 189 F.3d at 873-874 (quoting *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 46 (1st Cir. 1998)).  A dilution cause of action has a narrow reach; it is available only for "a limited category of trademarks, those which are truly famous and registered" that "are deserving of national protection."  *Avery Dennison Corp.*, 189 F.3d 868 at 875.

Therefore, to bring a federal trademark dilution claim, a plaintiff must show that the mark is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  *Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*, 255 F. Supp. 3d 1005, 1009 (S.D. Cal. 2017) (citing 15 U.S.C. § 1125(c)(2)(A)).  When determining whether a mark is famous, courts consider the following factors: "(1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties,

United States District Court
Central District of California

(2) the amount, volume, and geographic extent of sales of goods or services offered under the mark, (3) the extent of actual recognition of the mark, (4) whether the mark was registered ... on the principal register." *Id.*

Here, Plaintiff claims to have promoted and used the Mark throughout the country and argues, therefore, that it has become a "famous and well-known symbol." (Dkt. 21 at 8). The only additional support Plaintiff provides for this claim, however, is his declaration stating he has used the Mark in California and "throughout the United States" since 2005. (Dkt. 21 at 6). It is not enough to state that the Mark has been publicized in a "geographically diverse" manner for 15 years; instead, to establish "fame," the mark must have reached the "general consuming public" and be a "mature and well-known brand." *Aegis Software, Inc.*, 255 F. Supp. 3d at 1009, 1010. Besides his contention that his Mark has garnered recognition on a local Southern California news channel, Plaintiff does not state any facts to support the conclusion that "Lemon Leaf Café" is a "household name." *Id.*

Therefore, the Plaintiff has failed to satisfy the "fame" prong, and Plaintiff has failed to state a trademark dilution claim. Accordingly, the second and third *Eitel* factors weigh against default judgment for Count 2.

### 3.   The Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Default judgment is favored when the sum of money involved, or the damages sought, are reasonable in light of the defendant's actions. *See Adobe Sys. Inc. v. Software Tech*, 2016 WL

4728119, at *5 (N.D. Cal. Sept. 8, 2016).  The Court has discretion in awarding statutory damages but should award damages in trademark infringement cases that are sufficient to deter future infringement.  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102-3 (N.D. Cal. 2014).

Here, Plaintiff seeks $25,000 in statutory damages.  (Dkt. 21 at 12).  The damages claimed by Plaintiff are below the maximum allowed by the statute and are warranted to deter future infringement.  *See Aztec Shops Ltd. v. State St Grill Sdsu Inc.,* 2014 WL 12026077, *5 (S.D. Cal., Mar. 14, 2014) (finding that $25,000 in statutory damages is reasonable as it is far below the statutory maximum and is sufficient to deter future violations).  Plaintiff also seeks $505.00, (Dkt. 21 at 11), which the Court finds reasonable.

Accordingly, this factor weighs in favor of default judgment.

4.   Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case."  *PepsiCo*, 238 F. Supp. 2d at 1177.  Upon entry of default by the clerk, the factual allegations of the complaint, except those relating to the amount of damages, are taken as true.  *Televideo Sys. Inc.*, 826 F.2d at 917–18.  Here, there is little possibility of a dispute concerning the material facts of Plaintiff's allegations.  *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

5.   <u>Possibility of Excusable Neglect</u>

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177.  Where the defaulting party is "properly served with the complaint, the notice of entry of default, as well as the papers in support of the [default] motion," the failure to defend cannot be attributed to excusable neglect.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Here, Plaintiff served the complaint on Defendant on February 4, 2020 (Dkts. 10, 12), and Defendant received copies of all papers that have been filed, including the Application for Clerk to Enter Default, the Default, and the Motion for Default Judgment.  (Dkts. 13, 15, 16, 21, 22).  Default was entered against Defendant on April 28, 2020 for failure to respond to the complaint or otherwise participate in any aspect of this litigation.  (Dkt. 21 at 4).  Where so much time has passed since both service of a complaint and entry of default, "the possibility of excusable neglect is remote."  *Elektra Entm't*, 226 F.R.D. at 393.

6.   <u>The Strong Public Policy Favoring Decisions on the Merits</u>

Though "[c]ases should be decided upon their merits whenever reasonably possible," a defendant's failure to respond "makes a decision on the merits impractical if not impossible."  *Eitel*, 782 F.2d at 1472.  Therefore "the preference to decide cases on the merits does not preclude a court

United States District Court
Central District of California

from granting default judgment." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (quoting *Kloepping v. Fireman's Fund,* 1996 WL 75314, at *2 (N.D. Cal. Feb.13, 1996)).  As the Federal Rules of Civil Procedure allow for termination of a case before a hearing on the merits where a defendant fails to defend an action, this factor also favors entry of default judgment against Defendant.  *Adobe Systems, Inc.*, 2019 WL 7841862, at *7.

Accordingly, because each *Eitel* factor favors entry of default as to the claims for federal trademark infringement, unfair competition, and common law trademark infringement, the Court GRANTS Plaintiff's motion for default judgment against Defendant as to Counts One, Three, and Four.

The Court DENIES default judgment against defendant on Count Two for federal trademark dilution.  Courts often treat the merits of the plaintiff's substantive claim and the sufficiency of the complaint as the most important *Eitel* factors and therefore outweigh the other factors in determining default judgment.  *Mnatsakanyan,* 2013 WL 10155707, at *10 (internal quotation and citation omitted).  Here, although the remaining *Eitel* factors weigh in favor of granting default judgment, Plaintiff's failure to state claim for federal trademark dilution weighs strongly against granting default judgment.

**B.   Plaintiff's Requested Relief**

"For default judgment under Federal Rule of Civil Procedure 55, granting damages is within "wide latitude" of the district court's discretion." *Elektra Entm't*, 226 F.R.D. at 394.  Here, Plaintiff requests the following relief: (1)

14

statutory damages, (2) costs of the action and (3) an injunction.  (Dkt. 21 at 11–14).

    1.   <u>Statutory Damages</u>

The Lanham Act provides for statutory damages of:

(1)  no less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2)  if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).  A district court has wide discretion in determining the amount of statutory damages to be awarded.  *Adobe Systems Incorporated v. Software Tech*, 2016 WL 4728119, at *6 (N.D. Cal., 2016) (internal quotations omitted).  Furthermore, the statute provides for enhanced statutory damages where a defendant's infringement is willful.  *Nautilus, Inc. v. Hempel*, 2013 WL 12133877, at *6 (C.D. Cal., 2013).

Courts generally consider the following seven factors when determining whether the requested amount of statutory damages under the Lanham Act are reasonable: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.  *Aztec*

United States District Court
Central District of California

*Shops Ltd. v. State St Grill Sdsu Inc.,* 2014 WL 12026077, at *5 (S.D. Cal., Mar. 14, 2014) (citing *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1235, 1237–38 (E.D. Cal. 2008)).

In *Aztec Shops Ltd.*, the plaintiff requested $25,000 in statutory damages for defendant's use of plaintiff's trademark in its restaurant and catering services. *Id.* at *1. Defendant's business directly competed with plaintiff's restaurant and catering services and ignored several cease and desist letters regarding the use of the trademark. *Id.* at *2. The plaintiff was unable to provide evidence of revenue lost because defendant did not participate in the litigation. *Id.* at *5. The court found, however, that the willfulness of the defendant's infringement and the deterring effect on the defendant and others were the most important factors in determining statutory damages. *See id.*

Here, Plaintiff seeks statutory damages in the amount of $25,000, which are within the statutory limits of the Lanham Act. (Dkt. 21 at 13). As in *Aztec Shops Ltd.*, Plaintiff is unable to determine lost profits based on Defendant's infringement. (Dkt. 21 at 13). Plaintiff has made a clear showing of willfulness: Plaintiff states that Defendant continued to use the Mark after receiving two written notices alerting Defendant to Plaintiff's ownership of the Mark. (Dkt. 21 at 13). *See Cards Against Humanity, LLC v. Skkye Enterprises*, 2017 WL 3671020, at *5 (E.D. Mo., 2017) (holding a defendant's continued infringement after notice of his wrongdoing is evidence of willfulness). Furthermore, Defendant did not participate in this litigation. *Nautilus, Inc. v. Hempel*, 2013 WL 12133877, at *6 (C.D. Cal.,

United States District Court
Central District of California

2013) (finding a defendant's failure to submit opposition to complaint may further support a finding of willfulness).

For the reasons stated above, the Court concludes that Defendant's infringement is willful, and that Plaintiff is eligible for enhanced statutory damages between $1,000 and $2,000,000 per counterfeit mark.  As such, Plaintiff's request for $25,000 is significantly below the statutory maximum. Although Plaintiff provides little if any evidence of actual damages suffered, courts in this circuit have made clear that, where, as here, trademark infringement was willful, an award of statutory damages is appropriate to deter violations and to penalize the infringing party.  *See Belks Media v. OnlineNIC*, 2011 WL 5038576, at *2 (N.D. Cal., 2011) (holding that despite plaintiff's failure to provide evidence of expenses saved, profits reaped, revenues lost, or value of its trademark rights, the $50,000 requested was reasonable to discourage defendant and deter others from infringing).

This Court has also acknowledged that statutory damages are particularly appropriate when a defendant has failed to mount any defense or to participate in litigation.  *Adobe Systems, Inc. v. Dafang USA, LLC*, 2019 WL 7841862, at *7 (C.D. Cal., 2019) ("The sum of money at stake…is reasonable when balanced against the defendant's failure to appear and defend [p]laintiff's claims.").  Here, Defendant has not filed any opposition to Plaintiff's complaint, which has preempted any financial findings to determine compensatory damages.  *See Sream, Inc. v. Trukis25, Inc.*, 2016 WL 11672746, at *5 (C.D. Cal., Mar. 3, 2016) (holding $50,000 in statutory

damages is appropriate despite not knowing full extent of infringement, as defendant failed to respond to complaint).

The Court concludes, therefore, that an award of $25,000 for willful trademark infringement is reasonable.  The Court awards the Plaintiff $25,000 in statutory damages.

2.   Costs

Under the Lanham Act, the prevailing party may be awarded reasonable attorney fees and costs "in exceptional cases."  15 U.S.C. § 1117(a).  In determining whether a case is "exceptional," the Supreme Court has considered the following factors: "frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence."  *Grasshopper House, LLC v. Clean & Sober Media LLC*, 394 F. Supp. 3d 1073, 1119 (C.D. Cal., 2019) (quoting *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016)).  Courts should look to the totality of the circumstances to determine if the case was exceptional. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016).

Here, Plaintiff requests for $505 in costs.  (Dkt. 21, Ex. 1).  A plaintiff is entitled to fees and costs related to a motion for default judgment where plaintiff alleges defendant willfully infringed its trademark.  *Juno Therapeutics, Inc. v. Juno Biomedical, Inc.*, 2018 WL 2021483, at *8 (N.D. Cal., 2018).  Here, the Court has found that Defendant's infringement of Plaintiff's Mark was willful.  Plaintiff's costs, including filing fees and

United States District Court
Central District of California

expenses related to service of process, are supported by documentation. (Dkt. 21, Ex. I). *See, e.g.*, *Penpower Technology Ltd. v. S.P.C. Technology*, 627 F. Supp. 2d 1083, 1095 (N.D. Cal., 2008) (finding $2,005 in costs for the filing fee and for the costs of the process server were reasonable based off plaintiff's records). The Court therefore awards Plaintiff $505 in costs.

### 3. Injunctive Relief

Finally, Plaintiff seeks to enjoin Defendant permanently from using the Lemon Leaf Café Mark. (Dkt. 21 at 12). "15 U.S.C. § 1116(a) vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (internal quotations omitted). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

District courts apply "traditional equitable principles" in deciding whether to grant permanent injunctive relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). To obtain injunctive relief, a "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

United States District Court
Central District of California

United States District Court
Central District of California

1    Here, Plaintiff has established that he has suffered irreparable injury.

2    Plaintiff has estimated a loss of $5,000 to $10,000 per month due to

3    customer confusion and loss of business due to Defendant's wilful violation.

4    (Dkt. 21 at 13).  Plaintiff has spent time and resources for years in marketing

5    and promoting the Mark in California and across the United States and has

6    been recognized on a local news station and other televised food segments.

7    (Dkt. 1 ¶¶ 9,10).  *See Sennheiser Elec. Corp. v. Eichler*, 2013 WL 3811775,

8    at *10 (C.D. Cal. July 19, 2013) (lost profits and customers, as well as

9    damage to goodwill and business reputation will often constitute irreparable

10   injury in trademark infringement cases);  *See also Sream, Inc.,* 2016 WL

11   11672746, at *6 (injunction is appropriate when a counterfeit marks is

12   attached to products that could tarnish the brand, misleads consumers, and

13   damage years of earned goodwill).

14

15   Furthermore, "when a defendant is aware of the serious claims brought

16   against him, yet chooses to ignore the lawsuit, failure to grant the injunction

17   would needlessly expose the plaintiff to the risk of continuing irreparable

18   harm." *King Taco Rest., Inc. v. King Taco Inc*, 2019 WL 3064109, at *4

19   (C.D. Cal. May 14, 2019) (quoting *Philip Morris USA, Inc. v. Castworld*

20   *Prods., Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003)) (internal quotations

21   omitted).  Here, Defendant has been given notice of the claims and has

22   failed to participate in the litigation. *See Yelp Inc.,* 70 F. Supp. 3d at 1101

23   (finding permanent injunctive relief appropriate due to defendant's willful

24   infringement and ongoing trademark infringement after receiving cease and

25   desist letters);  *Adobe Sys., Inc. v. Tilley*, 2010 WL 309249, at *6 (N.D. Cal.

26

Jan. 19, 2010) (finding injunctive relief is warranted in light of defendants' willful and ongoing infringement and their failure to appear in the action).

Additionally, Plaintiff has established that monetary damages are not adequate to compensate for this injury as Defendant will continue to willfully infringe on the Mark, despite notice of this lawsuit and refusal to participate in this litigation. *See Sennheiser Elec. Corp.,* 2013 WL 3811775, at *10 (money damages cannot adequately compensate a rights holder for continued and ongoing trademark infringement).

Next, Plaintiff will continue to suffer irreparable harm without an injunction. Plaintiff would continue to be harmed, as Defendant would likely continue to use the Mark, leading to confusion among patrons unable to distinguish between Plaintiff's products and services and those offered by Defendant.  (Dkt. 1 ¶ 37).  Given the similarity of Defendant's mark, restaurant name, location, and services, the likelihood of confusion continuing from Defendant warrants issuance of an injunction to prevent future injury.  *Century 21 Real Estate Corp.,* 846 F.2d at 1181 ("Cases where the infringing use is for a similar service, broad injunctions are especially appropriate.").  Additionally, there is no indication that Defendant would suffer hardship were the court to grant an injunction, as Defendant would only be required to stop using the Mark and would be able to continue to operate its business. *Aztec Shops Ltd.,* 2014 WL 12026077, at *8 (finding defendant would not suffer hardship as it would still be permitted to continue to offer its restaurant and catering services).  Moreover, any hardship Defendant would possibly suffer is outweighed by the need to compel

Defendant's compliance with the Lanham Act.  *See Sennheiser Elec. Corp.,* 2013 WL 3811775, at *11; *Wecosign, Inc.*, 845 F. Supp. 2d at 1084 (finding that an injunction would not cause hardship to defendant as an injunction would bar defendant's illegal activities).

Finally, granting an injunction is in the public interest as "[t]he public has an interest in avoiding confusion between two companies' products." *Wecosign, Inc. v. IFG Holdings, Inc.,* 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012).  *See also Sennheiser Elec. Corp.,* 2013 WL 3811775, at *11 (finding in trademark infringement cases that the public interest served is the right not to be deceived or confused).  The Court finds that injunctive relief is appropriate in this case.

The Court therefore GRANTS Plaintiff's request for a permanent injunction enjoining Defendant from using the Lemon Leaf Café Mark.  The scope of the injunction is set forth in the judgment that will be issued concurrently with this Order.

/ / /

/ / /

/ / /

### IV.    CONCLUSION

The Court therefore GRANTS Plaintiff's Motion for Default Judgment as to Counts 1, 3, and 4 and DENIES the Motion as to Count 2.  The Court awards Plaintiff $25,000 in damages and $505 in costs of suit.

**IT IS SO ORDERED.**

Dated:    8/26/20

Virginia A. Phillips
United States District Judge

23